## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| MURALIKRISHNA LEKKALA, on behalf of himself and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL DATA SOLUTIONS, INC., an Illinois corporation, and NAGESWARA R. MORAMPUDI, an individual,<br><br>Defendant. | Case No. 15-cv-1106<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff MURALIKRISHNA LEKKALA ("Lekkala"), on behalf of himself and all other persons similarly situated, known and unknown, for his Complaint against Defendants GLOBAL DATA SOLUTIONS, INC. ("GDS") and NAGESWARA R. MORAMPUDI ("Morampudi"), states as follows:

## INTRODUCTION

1. This is an action for violation of state and federal wage and hour laws by GDS and Morampudi against former and current employees of GDS, referred to below as "Covered Employees." The Covered Employees include Plaintiff Lekkala and his co-workers throughout the company who were all similarly withheld pay by GDS for hours worked, both during the term of their employment and/or subsequent to their termination, who were employed by GDS during the last three years.

2. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 I.L.C.S. § 105/1, *et seq.* ("IMWL") and the Illinois Wage Payment and Collection Act, 820 I.L.C.S. § 115/1, *et seq.* ("IWPCA"),

for GDS's failure to pay wages to Plaintiff and similarly situated employees for all hours worked and/or withholding of payments when such payments were due and owing. GDS and Morampudi's actions were and are willful.

## **JURISDICTION AND VENUE**

3. This Court has original jurisdiction over this matter under 28 U.S.C. §1331, because this case arises under the provisions of the FLSA, 29 U.S.C. § 201, *et seq.* In addition, the Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. §1367 over all claims raised herein arising under Illinois state law to the extent said claims arise from the same facts which give rise to the Court's original subject matter jurisdiction pursuant to 28 U.S.C. §1331.

4. This Court may exercise personal jurisdiction over the Defendants pursuant to 735 I.L.C.S. § 5/2-209, because: (a) the causes of action here arise from GDS and Morampudi's transactions of business in Illinois; (b) GDS and Morampudi are doing business in Illinois; and (c) exercising jurisdiction is permissible under the Illinois Constitution and/or the Constitution of the United States.

5. Under 28 U.S.C. § 1391, venue is proper in this District because: (a) a substantial part of the events and omissions giving rise to the claims occurred in this District; (b) there is personal jurisdiction in this District over Defendants GDS and Morampudi; and (c) presently and at all times, GDS and Morampudi conducted substantial, continuous and systematic commercial activities in this District.

**PARTIES**

6. At all times material hereto, Plaintiff Lekkala was domiciled in Naperville, Illinois. He was employed by the Defendant GDS, beginning on July 1, 2013 and continuing until October 31, 2014, and has been an "employee" of Defendants as defined by the FLSA, the IMWL, and the IWPCA. Under 28 U.S.C. § 1332, he is a citizen of the State of Illinois. He hereby consents to sue Defendant under 29 U.S.C. § 216(b).

7. Defendant GDS is an Illinois corporation that provides IT consulting services to customers nationwide. Defendant GDS's principal place of business is located at 301 S. Prospect Road, Suite 1H, Bloomington, Illinois 61704. Pursuant to 28 U.S.C. §§ 1332 and 1348, GDS is a citizen of the State of Illinois.

8. At all times material hereto, Defendant Morampudi has been the President, CEO, and Secretary of Defendant GDS and has been domiciled in and a citizen of the State of Illinois.  On information and belief, Defendant Morampudi is also the principal shareholder of Defendant GDS.

9. At all times relevant hereto, both Defendant GDS and Morampudi have jointly been Plaintiff's "employer," as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 I.L.C.S. § 105/3(c), and the IWPCA, 820 I.L.C.S. § 115/1 et seq.

10. At all times relevant hereto, Plaintiff, all other unnamed Class members, and all other unnamed collective action members, are either former or current employees of GDS and Morampudi.  Upon information and belief, within the relevant time period, GDS and Morampudi have employed many other workers whom GDS and Morampudi promised an hourly wage consisting of a percentage of the hourly billing rate for the employee.

## FACTUAL ALLEGATIONS

11. On June 13, 2013, Plaintiff received a written offer of employment as a Systems Analyst for GDS with an initial starting salary of $80,000 per annum. See Confirmation of Employment Offer, attached hereto as Exhibit A.

12. To the extent Lekkala was not a U.S. citizen, GDS offered to sponsor Lekkala's H1B application and pay all ordinary fees in connection therewith.

13. On June 18, 2013, Lekkala executed an Employment Agreement drafted by GDS. See Employment Agreement, attached hereto as Exhibit B.

14. Beginning on July 1st 2013, Lekkala began working on behalf of GDS at a client location in Bloomington, Illinois (Country Financial).

15. Between July 1, 2013 until March 1, 2014, GDS paid Lekkala a fixed salary of $6,666.67 per month.

16. Between March 1, 2014 and March 10, 2014, Lekkala worked 40 hours at the Bloomington, Illinois (Country Financial) client location.

17. During the term of his employment, Lekkala became aware of a client opportunity at Oncor Electric in Dallas, Texas and alerted his employer, GDS, of the opportunity.

18. On March 10, 2014, Lekkala began working on behalf of GDS at Oncor Electric in Dallas, Texas through prime vendor Ecommquest at a billing rate of $95.00 per hour.

19. In connection with this change in assignment, GDS modified the terms of Lekkala's pay from a fixed salary of $6,666.67 per month to an hourly rate of pay equal to 80% of the $95.00 hourly billing rate from GDS to Ecommquest (i.e. $76.00 per hour).

20. On information and belief, GDS has agreed to pay other Covered Employees a similar hourly wage, consisting of a fixed percentage of the rate at which GDS billed out the employees to its customers.

21. Between March 10, 2014 and March 31, 2014, Lekkala worked 142 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for March 2014 = $13,490.00).

22. On April 15, 2014, GDS paid Lekkala $6,666.67 for services performed in March 2014, which constituted an underpayment of $4,125.33.

23. Between April 1, 2014 and April 30, 2014, Lekkala worked 200 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for April 2014 = $19,000.00).

24. In an attempt to partially resolve the outstanding underpayment, GDS paid Lekkala a "productivity bonus" of $5,000.00 on May 15, 2014, in addition to a monthly paycheck of $6,666.67; however, for the months of March and April 2014, even including the mischaracterized "productivity bonus," GDS had underpaid Lekkala a total of $3,533.33.

25. Between May 1, 2014 and May 31, 2014, Lekkala worked 206 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for May 2014 = $19,570.00).

26. On June 15, 2014, GDS paid Lekkala a monthly paycheck of $6,666.67, constituting an underpayment of $8,989.33.

27. Between June 1, 2014 and June 30, 2014, Lekkala worked 251 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for June 2014 = $23,845.00).

28. On July 15, 2014, GDS paid Lekkala a monthly paycheck of $6,666.67 and a $6,000.00 "productivity bonus", constituting an underpayment of $6,409.33.

29. Between July 1, 2014 and July 31, 2014, Lekkala worked 221 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for July 2014 = $20,995.00).

30. On August 15, 2014, GDS paid Lekkala a monthly paycheck of $6,666.67 and a $5,000.00 "productivity bonus", constituting an underpayment of $5,129.33.

31. Between August 1, 2014 and August 31, 2014, Lekkala worked 203 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for August 2014 = $19,285.00).

32. On September 15, 2014, GDS paid Lekkala a monthly paycheck of $6,666.67 and a $13,334.00 "productivity bonus" and "retroactive pay" in the amount of $1666.67, belatedly reducing prior underpayments by $6,239.34; however, as of September 15, 2014, GDS still owed Lekkala back-wages totaling $23,587.31 since March 2014.

33. Between September 1, 2014 and September 30, 2014, Lekkala worked 230 hours, which were billed by GDS to Ecommquest at a rate of $95.00 per hour (total fees to Ecommquest for September 2014 = $21,850.00).

34. Throughout the term from March 2014 through October 2014, Lekkala repeatedly requested to Morampudi that GDS pay him his accumulating back-wages, to which Morampudi and GDS responded that payment would be forthcoming.

35. On September 12, 2014, Morampudi e-mailed Lekkala a spreadsheet created by Morampudi showing that, as of that date, GDS owed Lekkala back-wages totaling $28,185.65 by its own calculations.

36. On October 15, 2014, GDS paid Lekkala a monthly paycheck of $7,500.00 and a $13,334.00 "productivity bonus", belatedly reducing prior underpayments by $3,354.00; however, as of October 15, 2014, GDS still owed Lekkala back-wages totaling $20,233.31 since March 2014.

37. In October 2014, Lekkala worked 142 hours, which were billed by GDS to Ecommquest as vendor for Oncor Electric at a rate of $95.00 per hour (total fees to Ecommquest for October 2014 = $13,490.00).

38. On November 15, 2014, GDS paid Lekkala a monthly paycheck of $7,326.78, constituting an underpayment of $3,465.22.

39. After months of unfulfilled promises that his back-wages would be paid, Lekkala submitted his written resignation to Defendant GDS on October 31, 2014.

40. On December 15, 2014, GDS paid Lekkala a check in the amount of $346.30, which they falsely characterized as a "final payment" of back-wages owed, also attempting to assert a "liquidated damages" claim for $10,000.00 based on Lekkala's resignation; however, as of December 15, 2014, GDS still owed Lekkala back-wages totaling $23,352.23 since March 2014, a prior material breach of the Employment Agreement by GDS.

41. On information and belief, GDS and Morampudi were intentionally withholding payments from Lekkala (and potentially many other H1B employees as well), both as a means to limit his ability to seek other employment without forfeiting all withheld back-wages and to manage the company's cash-flow resulting from delays in payment between the time services are rendered and invoices are ultimately paid by the end-clients, at the expense of its employees.

42. GDS and Morampudi intentionally attempted to take advantage of Plaintiff's H1B immigration status and other Class members' immigration status in order to avoid paying Plaintiff and the Class, thereby violating the FLSA, IMWL, and IWPCA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

43. In Count I (below), Plaintiff brings an action for a violation of the FLSA in a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all Covered Employees on or after the date that is three years before the filing of the Complaint ("FLSA Collective Plaintiffs").

44. At all relevant times, Plaintiffs and the other Covered Employees are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have all been subject to GDS and Morampudi's common decision, policy, plan, program, practice, procedure, protocol, routine, and/or rule, under which GDS has (a) willfully failed and refused to pay them their hourly wages for all hours worked, and/or (b) unlawfully withheld payments subsequent to termination of employment ("wage theft"). The claims of Plaintiffs stated herein are the same as those of the other Covered Employees.

45. Count I (below) is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The Covered Employees are readily ascertainable. For purpose of Notice and other purposes related to this action, their names and addresses are readily available from GDS. Adequate notice can be provided to the Covered Employees via first class mail.

## RULE 23 CLASS ACTION ALLEGATIONS

46. In Count II (below), Plaintiff brings an action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following Class (the "IMWL Class" or "Class"): "All people residing in any state who were:

   a. Employed by GDS during the Class Period;

   b. Told by GDS that they would be paid an hourly wage as a percentage of the rate at which GDS billed its customers for the employee's services; and

   c. Subject to GDS's unlawful compensation policies of failing to pay wages for all hours worked as such wages became due and owing.

47. The "Class Period" is three years prior to the filing of this Complaint.

48. Plaintiff does not know the exact size of the IMWL Class. However, Plaintiff believes that due to the nature of the trade and commerce involved, there are potentially hundreds of class members (or more) geographically dispersed throughout Illinois and the country, such that joinder of all class members would be impracticable.

49. Plaintiff's claims are typical of the claims of the IMWL Class, and Plaintiff will fairly and adequately protect the interests of the IMWL Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the IMWL Class. Plaintiff has retained competent counsel experienced in the claims alleged herein.

50. Common questions of law and fact exist with respect to the claim set forth in Count II, including:

    a. Whether GDS has had a common policy, plan, practice, procedure, protocol, routine, and/or rule regarding the intentional unlawful withholding of employee wages and the failure to pay, or unlawful withholding of, wages of employees who resign;

    b. Whether Plaintiff and the IMWL Class members have all been subject to GDS's common policy, plan, practice, procedure, protocol, routine, and/or rule regarding withheld wages or non-payment in the case of employee resignation;

    c. Whether GDS engaged in conduct that violated the IMWL when it failed to pay wages to Plaintiff and IMWL Class members as they became due;

    d. Whether GDS engaged in conduct that violated Illinois law by failing to pay Plaintiff and the other IMWL Class members when they resigned;

    e. Whether GDS's unlawful conduct caused injury to the Plaintiff and the IMWL Class members, and, if so, the appropriate measure of damages for each of the Classes; and

    f. Whether the Plaintiff and the IMWL Class members should be awarded punitive damages under Illinois law on account of GDS's unlawful conduct.

51. These questions, and other questions of law and fact, are common to the IMWL Class and predominate over any questions affecting only individual class members, including legal and factual issues relating to liability and damages.

52. Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

    a. It will avoid a multiplicity of suits and consequent burden on the courts and GDS;

    b. It would be virtually impossible for all members of the IMWL Class to intervene as parties-plaintiff in this action;

c. It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries; and

d. It will provide court oversight of the claims process, once GDS's liability is adjudicated.

53. The claims asserted herein are also appropriate for class certification under the laws of State of Illinois.

54. Adequate notice to the members of the IMWL Class is possible under Rule 23(b)(3).

### COUNT I - Violation of the FLSA – Minimum Wages
### Plaintiff on behalf of himself and other FLSA Collective Plaintiffs
### Section 216(b) Collective Action Against Defendants GDS and Morampudi

55. Plaintiff, on behalf of himself and the other FLSA Collective Plaintiffs, realleges and incorporates by reference Paragraphs 1 through 54 above.

56. This Count arises from Defendants' violation of the FLSA for Defendants' failure to pay Plaintiff and the other FLSA Collective Plaintiffs for all time worked which resulted in being paid less than the federally required minimum wage.

57. Plaintiff and the other FLSA Collective Plaintiffs were directed to work and, in fact, did work but were not compensated at least at the federal minimum wage rate for all time worked.

58. Plaintiff and the other FLSA Collective Plaintiffs were entitled to be compensated at least at the federal minimum wage rate pursuant to the FLSA.

59. Defendants violated the FLSA by failing to compensate Plaintiff and the other FLSA Collective Plaintiffs at least at the federal minimum wage rate for all time worked.

60. Plaintiff and the other FLSA Collective Plaintiffs are entitled to recover unpaid wages for up to three (3) years prior to the filing of this suit because Defendants' failure to pay at least the federal minimum wage rate was a willful violation of the FLSA.

WHEREFORE, Plaintiff and the other FLSA Collective Plaintiffs pray for a judgment against Defendants as follows:

    A.    That the Court determines that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

    B.    A judgment in the amount of the difference between the federally-mandated minimum wage rate and the hourly wage paid to Plaintiff and the other FLSA Collective Plaintiffs;

    C.    Liquidated damages in the amount equal to the unpaid minimum wages;

    D.    That the Court declare that Defendants violated the FLSA;

    E.    That the Court enjoin Defendants from violating the FLSA;

    F.    Reasonable attorneys' fees and costs of this action as provided by the FLSA; and

    G.    Such other and further relief as this Court deems appropriate and just.

### COUNT II - Violation of the IMWL – Minimum Wages
### Plaintiff on behalf of himself and similarly situated employees
### Class Action Against Defendants GDS and Morampudi

61. Plaintiff, on behalf of himself and the IMWL Class, realleges and incorporates by reference Paragraphs 1 through 54 above.

62. This Count arises from Defendants' violation of the IMWL for Defendants' failure to pay Plaintiff and similarly situated employees at least the Illinois-mandated minimum wages for all time worked in individual work weeks.

63. Plaintiff and IMWL Class members were directed to work by Defendants and, in fact, did work but were not compensated at least at the Illinois minimum wage rate for all time worked.

64. Pursuant to 820 I.L.C.S. § 105/4, Plaintiff and other similarly situated employees were entitled to be compensated at least the then applicable Illinois-mandated minimum wage rate for all time worked.

65. Defendants violated the IMWL by failing to compensate Plaintiff and other similarly situated employees at least the Illinois-mandated minimum wage rate for all time worked.

66. The Class that Plaintiff seeks to represent in regard to the minimum wages claim arising under the IMWL is composed of and defined as all persons who have been employed by Defendants and promised an hourly wage consisting of a percentage of the employee's billing rate, since March 15, 2012 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class he seeks to represent pray for a judgment against Defendants as follows:

   A.   That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

   B.   A judgment in the amount of all unpaid wages due to Plaintiff and the Class as provided by the IMWL;

   C.   Statutory and exemplary damages for Plaintiff and the Class pursuant to the formula set forth in 820 I.L.C.S. § 105/12(a);

   D.   An award of prejudgment interest on the unpaid overtime wages in accordance with 815 I.L.C.S. § 205/2;

   E.   That the Court declare that Defendants have violated the IMWL;

F. That the Court enjoin Defendants from violating the IMWL;

G. Reasonable attorneys' fees and costs of this action as provided by the IMWL, 820 I.L.C.S. § 105/1 et seq.;

H. Such other and further relief as this Court deems appropriate and just.

### COUNT III - Violation of the IWPCA – Unpaid Wages
### Plaintiff on behalf of himself and similarly situated employees
### Class Action Against Defendants GDS and Morampudi

67. Plaintiff, on behalf of himself and the IMWL Class, realleges and incorporates by reference Paragraphs 1 through 53 above.

68. This Count arises from Defendants' violation of the IWPCA for its failure to pay Plaintiff and the Class he represents wages earned for all time worked at the rate agreed to by the parties.

69. During the course of his employment with Defendants, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate consisting of 80% of Plaintiff's $95.00 per hour billing rate, or $76.00 per hour.

70. Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

71. Defendants had a practice of not paying Plaintiff and other similarly situated employees all compensation at the rate agreed to by the Parties.

72. Defendants' practice of not paying Plaintiff and other similarly situated employees was a knowing and intentional violation of federal and Illinois state law, designed to discourage employees from seeking alternate employment and to permit the company to avoid paying wages until after payments were received from Defendants' customers.

73. Plaintiff and the Class members were entitled to be paid for all time worked at the rate agreed to by the parties.

74. Defendants' failure to pay Plaintiff and the Class members for all time worked at the rate agreed to by the parties violated the IWPCA.

75. Plaintiffs and the Class members are entitled to recover owed wages for a period extending back to March 15, 2012.

76. The Class that Plaintiff seeks to represent in regard to the claim for unpaid wages pursuant to the IWPCA is composed of and defined as all persons who have been employed by Defendants and promised an hourly wage consisting of a percentage of the employee's billing rate, since March 15, 2012 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class he seeks to represent pray for a judgment against Defendants as follows:

A. That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

B. A judgment in the amount of all back wages due Plaintiff and the Class as provided by the IWPCA;

C. Statutory and exemplary damages for Plaintiff and the Class pursuant to the formula set forth in 820 I.L.C.S. § 105/12(a);

D. An award of prejudgment interest on the unpaid overtime wages in accordance with 815 I.L.C.S. § 205/2;

E. That the Court declare that the Defendants have violated the IWPCA;

F. That the Court enjoin Defendants from violating the IWPCA;

G. Reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

H. Such other and further relief as this Court deems appropriate and just.

**COUNT IV - Violation of the IWPCA – Unlawful Deductions**
**Plaintiff on behalf of himself and similarly situated employees**
**Class Action Against Defendants GDS and Morampudi**

77. Plaintiff, on behalf of himself and the IMWL Class, realleges and incorporates by reference Paragraphs 1 through 53 above.

78. This Count arises from Defendants' practice of making unlawful deductions from Plaintiff's and other similarly situated employees' earned wages.

79. During the course of his employment with Defendants, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

80. Defendants had a practice of making unlawful deductions from Plaintiff' earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff's benefit; (c) were not in response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

81. Defendants likewise had a practice of making unlawful deductions from other similarly situated employees' wages without their authorization.

82. These unlawful deductions included, but were not limited to, fees relating to the employees' immigration applications which Defendant GDS, as the employer, was obligated to pay pursuant to federal law.

16

83. These unlawful deductions also included, without limitation, Defendants' claimed "liquidated damages," which are unenforceable under federal and Illinois state law.

84. Defendants' practice of making unlawful deductions from Plaintiff's and other similarly situated employees' earned wages violated the IWPCA.

85. Plaintiff and other similarly situated employees are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit.

86. The Class that Plaintiff seeks to represent in regard to the claim for unlawful deductions under the IWPCA is composed of and defined as all persons who have been employed by Defendants and promised an hourly wage consisting of a percentage of the employee's billing rate, since March 15, 2012 to the date a final judgment is entered in this matter and who had unauthorized or unlawful deductions made to their earned wages.

WHEREFORE, Plaintiff and the Class he seeks to represent pray for a judgment against Defendants as follows:

A. That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

B. A judgment in the amount of all back wages due Plaintiff and the Class as provided by the IWPCA;

C. Statutory and exemplary damages for Plaintiff and the Class as provided by the IWPCA;

D. An award of prejudgment interest on the unpaid overtime wages in accordance with 815 I.L.C.S. § 205/2;

E. That the Court declare that the Defendants have violated the IWPCA;

F. That the Court enjoin Defendants from violating the IWPCA;

G. Reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

H. Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiff, on behalf of himself and all other Covered Employees, hereby demands a jury trial on all causes of action and claims with respect to which there is a right to a jury trial.

Dated: March 16, 2015

Respectfully Submitted,

**SEDGWICK LLP**

By: /s/ Fred A. Smith
One of the attorneys for Plaintiff MuraliKrishna Lekkala

Fred A. Smith (Bar No.6183157)
fred.smith@sedgwicklaw.com
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL  60606-2841
Telephone:    312.641.9050
Facsimile:    312.641.9530